## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

_____

JOHNNY JAMES COLLIER,

                        Plaintiff                  DECISION & ORDER

       -vs-                                04-CV-6514-CJS

HARTER, et al.,

                        Defendants.

_____

### APPEARANCES

For plaintiff:                    Johnny James Collier, *pro se*
                                    67 High Street
                                    Geneva, NY 14456

For defendants:                 Benjamin A. Bruce, A.A.G.
                                    New York State Office of the Attorney General
                                    144 Exchange Boulevard
                                    Suite 200
                                    Rochester, NY 14614

### INTRODUCTION

**Siragusa, J.**  Johnny James Collier, ("Plaintiff"), a prison inmate previously in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"),[1] brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants  for alleged violations of his Constitutional rights under the Eighth Amendment in connection with medical care he received at Livingston, Groveland, and Gowanda

_____

[1] The New York State Department of Correctional Services (DOCS) merged with the New York State Division of Parole to become the DOCCS on April 1, 2011.

Correctional Facilities in 2004-2006. ECF Nos. 1, 53. Prior to entering DOCCS custody, Plaintiff was incarcerated at the Ontario County Jail. He also alleges that his constitutional rights were violated when the medical staff there failed to provide him with adequate medical care. *Id.*

Now before the Court are the Defendants' motions for summary judgment.[2] ECF Nos. 69, 72.  For the reasons stated below, Defendants' motions are granted, and this action is dismissed.

## BACKGROUND

The following facts are undisputed and viewed in the light most favorable to the Plaintiff.

From 2004 to 2006, Benjamin C. Augustin ("Augustin") was employed by DOCCS as a physician at the Livingston County Correctional Facility ("Livingston"). Anthony M. DePerio ("DePerio") was employed by DOCCS as a physician in 2004 and provided health care services at Groveland Correctional Facility ("Groveland"). Catherine Felker ("Felker") was the Nurse Administrator at Groveland from March, 2002, to June, 2007. Jose Melendez ("Melendez") was employed as the Deputy Superintendent for Programs at Gowanda Correctional Facility ("Gowanda") during the time Plaintiff was confined there from October 7, 2005, to February 3, 2006.[3]  Defendant Deborah Harter ("Harter" or "the County Defendant") was employed part-time as a Certified Nurse Practitioner at the

---

[2] Defendants have provided the *pro se* Plaintiff with the *Irby* notice required by the Local Rules of Civil Procedure. ECF Nos. 69, 72. *See* Loc. R. Civ. P. 56(b); *Irby v. New York City Transit Authority*, 262 F.3d 412, 413 (2d Cir. 2001).

[3] Augustin, DePerio, Felker, and Melendez will be referred to collectively as "the State Defendants" where appropriate.

Ontario County Jail from May, 2003 to August, 2006.

***Ontario County Jail***

Prior to entering DOCCS custody, Plaintiff was incarcerated in the Ontario County Jail from May 23 to September 11, 2003. On May 23, 2003, Ontario County Jail staff conducted a health assessment of Plaintiff, which indicates that Plaintiff claimed to have fallen in 2001, was experiencing back problems, and was prescribed several medications for his condition. Ontario County Jail has a medical file for Plaintiff that documents and brings to the staff's attention Plaintiff's medical needs and specifically, his back problems. The file indicates that on May 29, 2003, a conference call was held with Plaintiff's physician, Dr. Steven Lasser, who indicated to jail staff that Plaintiff "ha[d] a [worker's compensation] case and is awaiting approval for a myelogram. He is not on any narcotics for pain control and he can wait until his release for further comp work up." Harter Ex. E, ECF No. 80. However, based on Plaintiff's continued complaints, Ontario County Jail staff attempted to contact Dr. Lasser's office again. Ultimately, they were informed on June 26 that it was "appropriate to [continue] muscle relaxant until further eval and work up." *Id.*

Plaintiff requested a myelogram from Jail staff, who in turn continued to attempt to contact Dr. Lasser. On August 4, Dr. Lasser informed staff that Plaintiff would need to fill out certain paperwork and provide it to the attorney handling his worker's compensation case. A week later, Lasser's office told staff that Plaintiff was scheduled to have a myelogram for his worker's compensation case on May 29, 2003, but a telephone interview had to occur prior to the myelogram appointment. Since Plaintiff was incarcerated at that time, he could not complete the interview or the myelogram screening.

Plaintiff, who was able to care for himself in the months prior to his incarceration, claims that his symptoms were exacerbated while he was in jail. During his confinement at Ontario County Jail, Plaintiff was able to independently care for his personal hygiene, as well as participate in the Jail's scheduled recreation.

### Livingston Correctional Facility

Plaintiff arrived at Livingston on October 20, 2003 and remained there until he was transferred to Groveland on July 12, 2004. Plaintiff was transferred back to Livingston for disciplinary reasons on August 6, 2005, and was confined there until October 7, 2005, when he was transferred to Gowanda. Plaintiff was transferred out of Gowanda on February 3, 2006.

When Plaintiff was received by DOCCS on September 11, 2003, at the Elmira Correctional Facility, he advised medical staff that he was under care for three ruptured discs and stated that he was taking Elavil, Neurontin, Soma, and Motrin. Initially, a prescription for these four medications was written, but Soma was discontinued prior to his arrival at Livingston on October 20, 2003. As of that date, Plaintiff received a  received permission for a temporary lower bunk, and was prescribed Elavil, Neurontin, and Motrin pending a physician's evaluation scheduled for November 3, 2003.

Between October 20 and November 3, 2003, Plaintiff was seen several times by Augustin's medical staff. At his November 3 appointment with Augustin, the doctor took note that Plaintiff claimed that he had a ruptured disc as a result of a work-related injury that occurred prior to his incarceration and that he suffered chronic lower back pain. Augustin discontinued the prescription for Neurontin and re-prescribed Soma, as well as 600mg of Motrin. However, the prescription for Soma was not approved by the regional

health services administration, and the following day Augustin prescribed Flexeril.

During the period Plaintiff was confined at Livingston, he was seen on several occasions by medical staff, and he was treated for high blood pressure, dental issues, and knee problems, as well as for his complaints of continuous back and leg pain. He was provided a back brace and placed on permanent program limits.

On January 8, 2004, following an x-ray of Plaintiff's back, Plaintiff was diagnosed with degenerative disc disease.  Plaintiff was again prescribed Neurontin, and he continued to take Flexeril and Elavil.  He was also was permitted to use a cane. His request for Soma (which had previously been denied) and his request to discontinue Felxeril were granted. Adjustments were also made to Plaintiff's medications for high blood pressure.

In April, 2004, an MRI was ordered for Plaintiff, and he was referred by Augustin for an orthopedic consultation.  Plaintiff received a new back brace and cane the following month. The MRI indicated degenerative changes at L5-S1 and a disc protrusion in May of 2004.

Plaintiff was seen by Dr. Robert Lifeso ("Lifeso") at the Erie County Medical Center ("ECMC") in June, 2004. Lifeso requested that the MRI and the January, 2004 x-ray be provided to him in order to develop a treatment program for Plaintiff's back pain. In addition, staff at Livingston provided Plaintiff's medical records from the Ontario County Jail on June 25, 2004.  On July 12, 2004, Plaintiff was transferred to Groveland.

***Groveland Correctional Facility***

Upon Plaintiff's arrival at Groveland, he underwent a routine health screening and orientation. The records from Groveland indicate that he was treated for high blood pressure with hydrochlorothiazide ("HCTZ") and Vasotect, and continued to take Neurontin

and Elavil for his back problems. On July 12, 2004, Plaintiff was issued a cane, a back brace, and a temporary lower bunk permit through August 18, 2004.

On July 26, 2004, Plaintiff was scheduled for another orthopedic consultation at ECMC, however, Plaintiff advised the consultant that he preferred conservative management of his condition in lieu of surgery. As a result, Plaintiff was prescribed non-steroidal anti-inflammatory drugs, physical therapy, and continued on Soma.

On August 4, 2004, Plaintiff appeared at sick-call and requested an elevator permit, and his request was denied at that time. On August 13, 2004 Plaintiff was seen by DePerio, who re-issued him a lower bunk permit, a cane, back brace, and prescribed an analgesic balm and hot compresses for Plaintiff's lower back pain. During that appointment, DePerio refused Plaintiff's' request for a Soma prescription. Following those two appointments, Plaintiff filed a grievance regarding his medical treatment at Groveland. The Inmate Grievance Program Superintendent denied Plaintiff's grievance on the grounds that Plaintiff's medical condition did not require an elevator permit and because Soma was no longer an approved non-formulary medication.

Plaintiff again appeared at sick-call at Groveland on August 25 and August 26, 2004. During the first appointment Plaintiff was issued a lower bunk permit, a cane, and a back brace. During the second appointment the following day,  Plaintiff told the nurse his back pain was "too persistent to live" and requested back surgery. Augustin Decl., Ex. A, ECF No. 81, at 260.  He was scheduled for an evaluation by a physician's assistant.

On August 30, 2004, Plaintiff declined physical therapy treatment due to his level of pain, and stated that he would attempt to get surgical intervention. *Id.* at 259. That day, Plaintiff wrote a letter addressed to "Medical Records"  indicating that he wanted surgery

because he believed his back pain was worsening. *Id.* at 258. Felker, the Nurse Administrator at Groveland, responded, stating that his request to return to the orthopedic clinic would be discussed at a subsequent appointment.

In September, 2004, Plaintiff continued to receive his prescribed medications. Plaintiff saw DePerio again on September 11, 2004, during which time DePerio noted that Plaintiff had requested surgery for his back. As a result, DePerio referred Plaintiff an orthopedic specialist at ECMC for a follow-up orthopedic consultation for surgical consideration. On October 25, 2004, Plaintiff was seen by orthopedic consultant Dr. Daniel Downs ("Downs"), at the Wende Regional Medical Unit.[4] Downs increased Plaintiff's pain medication, restrictions on activities, and physical therapy, and ordered a discogram.

Plaintiff was seen several times by medical staff at Groveland between October 25, 2004, and January 11, 2005. During those examinations, Plaintiff requested a prescription for Soma, but his request was not approved. During this time, Plaintiff continued to take Neurontin, Motrin, and Elavil. Plaintiff again requested, and was finally granted, an elevator permit in November, 2004, at Felker's recommendation. Felker's notes dated November 5, 2004, read: "Has 2 classes on 2nd floor of Peterson bldg. Will be issued a permit to use elevator on Tues/Thurs x 3 months. Hopefully he will be recovered from surgery by then and will not require a renewal." Augustin Decl., Ex. A at 239.

Plaintiff received a discogram on December 17, 2004 at Wyoming County Community Hospital. Following that procedure, Downs discussed the results of the

---

[4] DePerio's notes on Plaintiff's Ambulatory Health Record dated September 11, 2004, indicate "refer back to orth - ECMC," however the consultation report indicates that he was seen by an orthopedic consultant at the Wende Regional Medical Unit. Augustin Decl., Ex. A at 246, 253.

discogram with Plaintiff on January 11, 2005, and ordered surgical intervention for Plaintiff.

Plaintiff underwent spinal fusion back surgery at Wyoming County Community Hospital on March 4, 2005, after which he was returned to the Groveland infirmary and then released to the general population one week later, on March 11, 2005.

On March 15, 2005, Plaintiff reported to medical staff that he fell while he was in the infirmary approximately six days prior. X-rays taken the following day indicated no abnormality.

Plaintiff's surgical staples were removed on or about March 22, 2005, and Plaintiff was observed to be "doing well" and was encouraged to increase walking. Augustin Decl., Ex. A at 141. Physical therapy was ordered, and Plaintiff received various follow-up evaluations and testing. His request for continued feed ups in his cell (as opposed to walking to the mess hall) was denied on April 8, 2005, to encourage Plaintiff to exercise.

On April 18, 2005, Plaintiff was seen by a physical therapist who noted that Plaintiff was "currently ambulating long distances, no gait problems, and no increase in lower back pain." *Id.*, at 131.

Plaintiff's request on May 12, 2005, to be "medically unassigned," i.e., not required to report for his work assignment, was denied as unnecessary. Downs, the orthopedist, consulted with Plaintiff shortly thereafter, and noted in his report that Plaintiff would face difficulty in sitting for long periods of time, and, if required to do so, should get up and change positions regularly. He further commented that "continued exercises and therapy . . . would be beneficial . . . . He is not taking any narcotics presently, so he is doing quite well as far as his pain management," and noted that the lumbosacral corset and cane were more "psychologically beneficial than mechanically supportive, so I encouraged him to get

rid of those." Augustin Decl., Ex. A at 103.

Plaintiff was transferred out of Groveland for disciplinary reasons on August 6, 2005. In the preceding months, Plaintiff was issued temporary program restrictions and a cane, received physical therapy, was seen at sick call frequently by medical staff, and was regularly ordered his prescription medications. Prior to his transfer, Plaintiff's physical therapist noted Plaintiff's continued improvement.

***Gowanda Correctional Facility***

At the time of his arrival at Gowanda, Plaintiff had no acute medical complaints. On October 13, 2005, Plaintiff requested a cane and a back brace, and was scheduled for an evaluation with a physician on October 18, 2005. On that date, Dr. John Piazza noted that Plaintiff's radiculopathy had returned, and issued orders for a cane, a back brace, an x-ray, and an orthopedic consultation.

On October 27, 2005, based upon Plaintiff's continued complaints of pain, Dr. Piazza ordered an MRI. An x-ray was taken the following day on October 28, 2005, at Brooks Memorial Hospital, showed that the alignment of Plaintiff's spine was within "normal limits." Augustin Decl., Ex. A at 70. The MRI dated November 26, 2005, revealed similar results.

On December 28, 2005, Plaintiff had another orthopedic consultation with Downs at Wyoming Valley Orthopedics for follow-up regarding his spine fusion. The consultant noted that Plaintiff's "decompression continues to do well" but that Plaintiff continued to have back and leg pain. *Id.* at 53. The doctor observed,

> What it really comes down to is that he has been transferred from facility to facility. He was placed in a fourth floor room and had to run up and down the stairs which increased his back

> and leg pain. He appropriately was transferred to a first floor setting by the facility health care providers and that has helped to resolve the severe pain. He continues voice complaints of more lower back and leg pain. . . . [W]hat I am seeing his that his subjective complaints are now outweighing objective findings.

*Id.*

Finally, Downs concluded that "I do not see any signs on the MRI, any pathology that would indicate a change or failure to his spine fusion and pedicle screw decompression." *Id.*

On December 30, 2005, Plaintiff wrote to Melendez to request a reasonable accommodation. A few days later, Melendez forwarded a "Request for Reasonable Accommodation" form to Plaintiff, which he completed, asking that he be transferred to a one-level facility. His request was verified by a physician and was approved by Melendez on January 12, 2006, and Plaintiff was subsequently transferred to Orleans Correctional Facility, which complied with his request. Bove Decl., ECF No. 69, Ex. 4, 5, 6.

## DISCUSSION

### *Summary Judgment Standard*

Summary judgment may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.  56(a). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a *prima facie* showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy

this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)), *cert. denied*, 517 U.S. 1190 (1996).

The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the nonmoving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993). Moreover, since Plaintiff is proceeding *pro se*, the Court is required to construe his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

### Section 1983

Plaintiff is suing pursuant to 42 U.S.C. § 1983, and the legal principles generally applicable to such claims are well settled:

> In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a "person" acting "under the color of state law," and (b) that the defendant caused the plaintiff to be deprived of a federal right. *See, e.g.*, *Monroe v. Pape*, 365 U.S. 167 (1961). Additionally, "[i]n this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977).

*Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004).

***Eighth Amendment***

To show that prison medical treatment was so inadequate as to amount to "cruel or unusual punishment" prohibited by the Eighth Amendment, Plaintiff must prove that Defendants' actions or omissions amounted to "deliberate indifference to a serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Harrison v. Barkley*, 219 F.3d 132, 136–37 (2d Cir. 2000) ("A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

As the Supreme Court explained in *Wilson v. Seiter*, 501 U.S. 294, 298–99 (1991), this standard includes both an objective and a subjective component. With respect to the objective component, the court must ask whether there has been a sufficiently serious deprivation of the prisoner's constitutional rights. With respect to the subjective component, the court must consider whether the deprivation was brought about by Defendants in wanton disregard of those rights. *Id.* To establish deliberate indifference, therefore, Plaintiff must prove that Defendants had a culpable state of mind and intended wantonly to inflict pain. *See Wilson*, 501 U.S. at 299; *DesRosiers v. Moran*, 949 F.2d 15, 19 (1st Cir.1991); *Steading v. Thompson*, 941 F.2d 498, 500 (7th Cir. 1991); *Ross v. Kelly*, 784 F.Supp. 35, 44 (W.D.N.Y. 1992), *aff'd*, 970 F.2d 896 (2d Cir. 1992).

The *Estelle* court cautioned that mere negligence is not actionable. "A [prisoner's] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a

prisoner." *Estelle*, 429 U.S. at 106. Rather, the plaintiff must allege conduct that is "repugnant to the conscience of mankind," *id.* at 102, or "incompatible with the evolving standards of decency that mark the progress of a maturing society." *Id.* at 105–06. It is clear, then, that allegations of malpractice do not state a constitutional claim. *Id.*, 429 U.S. at 106 and n.14; *Chance*, 143 F.3d at 703–04; *Ross*, 784 F. Supp. at 44.

Likewise, an inmate's "mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703.

### The County Defendant's Motion

The Third Claim in the Second Amended Complaint alleges that Defendant Harter failed to provide Plaintiff with proper medical care while he was incarcerated at the Ontario County Jail in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. Specifically, Plaintiff contends that he was told by jail staff that he had to wait to see a back specialist until he was transferred to DOCCS. Second Am. Compl., ECF No. 53, Third Claim. Plaintiff claims that prior to his arrest and incarceration, his physician scheduled a myelogram per a 2001 worker's compensation disability claim, and that Defendant Harter intentionally refused to allow Plaintiff access to the appointment during his incarceration at the County Jail. *Id.*

Harter has moved for summary judgment on the grounds that Plaintiff's Eighth Amendment claim does not constitute deliberate indifference and that Harter is entitled to qualified immunity. Harter Mem., ECF No. 72-2, at 5-10. Plaintiff has filed an opposition to Harter's motion. Pl. Opp'n., ECF No. 83, at 1-3.

The record shows that, prior to arriving at the Ontario County Jail, Plaintiff was diagnosed with lumbar degenerative disease, and a recent MRI showed "fairly advanced degenerative changes" at certain lumbar discs with "no large herniation or significant stenosis." Harter Ex. G, ECF No. 80.

While district courts in this Circuit have held that severe back pain and degenerative disc disease may constitute "serious medical needs" for purposes of the Eighth Amendment, *see Faraday v. Lantz*, No. 03-CV-1520, 2005 WL 3465846 at *5 (D. Conn. Dec. 12, 2005) (Persistent complaints of "lower back pain caused by herniated, migrated discs [and] sciatica ..." leading to severe pain constitute a serious medical need.), *Mendoza v. McGinnis*, No. 05 Civ. 1124, 2008 WL 4239760 at 10  (N.D.N.Y. Sept. 11, 2008)) ("In this instance, given plaintiff's diagnosed condition of degenerative disc disease ... I conclude that a reasonable fact finder could find that the condition constitutes a serious medical need"), Plaintiff has not provided any evidence to show that his injury, during the relevant time frame, would result in "death, degeneration, or extreme pain." *Hathaway*, 99 F.3d at 553.

At the time of his arrival to the jail, Plaintiff was not prescribed narcotics, and his physician advised the jail's medical staff that Plaintiff could wait until his release for follow-up medical procedures with regard to his worker's compensation case. While Plaintiff's attorney did schedule a myelogram in connection with Plaintiff's worker's compensation case, his physician, Dr. Lasser, opined that it was unclear whether surgery would be appropriate in Plaintiff's case. Harter Ex. F, ECF No. 72-10, at 147; Ex. G. Likewise, Plaintiff's deposition testimony indicates that he was able to independently care for his personal hygiene, and participate in recreation, which included walking and push-ups.

Harter Ex. F at 152-154. The evidence in the record does establish that Plaintiff's diagnosed condition of degenerative disc disease was an chronic condition that required regular medical attention. Plaintiff, though, provides no evidence that his back pain while incarcerated at the Ontario County Jail was a condition of urgency sufficient to establish a serious medical need. *See Veloz v. New York*, 339 F.Supp.2d 505, 522-26 (S.D.N.Y. 2004) (no deliberate indifference where Plaintiff had mild to moderate degenerative spondylosis, but there was no indication that his condition was so serious that it could have produced "death, degeneration, or extreme pain").

There is also no evidence that the failure to provide the myelogram to Plaintiff caused additional harm. *See Thomas v. Nassau County Correctional Center*, 288 F.Supp.2d 333, 339 (E.D.N.Y. 2003) (citation omitted) (Even if a prisoner is able to establish a delay in medical treatment, he must also show that his condition became worse or deteriorated as a result of the delay to establish deliberate indifference). Plaintiff's conclusory allegation that he was in "more constant pain" while he was in jail, Harter Ex. F at 138-140, 142, by itself, is insufficient to defeat Harter's motion for summary judgment. *See Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002).

Even if the Court were to find that Plaintiff's back pain at that time[5] constituted a serious medical need, he nonetheless has failed to establish that Harter was deliberately indifferent to that need. The record supports Harter's position that Plaintiff's medical needs were adequately evaluated and that he was properly treated while incarcerated at the

---

[5] As stated earlier, Plaintiff underwent back surgery in March, 2005, two years after he was housed at the Ontario County Jail and one year after he advised an orthopedic consultant that he did not wish to have surgery.

Ontario County Jail. It is uncontroverted that Plaintiff was provided with his prescribed medication for his back pain on a regular basis Harter Ex. D, ECF No. 80. Upon Plaintiff's continuing complaints of pain, jail staff made numerous attempts to contact Plaintiff's primary physician. Harter Ex. E, ECF No. 80. Further, there is no admissible evidence that Harter refused to allow Plaintiff to attend his myelogram appointment. Indeed, the record indicates that the myelogram was ordered pursuant to Plaintiff's attorney's request in connection with a worker's compensation lawsuit in which he was involved, and that a prerequisite to the screening appointment was a telephonic interview that Plaintiff could not participate in due to his incarceration. There is, therefore, no evidence that Harter was aware of, and disregarded an excessive health risk to Plaintiff.

Plaintiff's response to Harter's motion does not persuade the Court to find otherwise. His opposition states that a document exists that he had "approval for the myelogram," and therefore medical staff at Ontario County Jail "disregarded and neglected to perform their duties per medical staff." Pl. Opp'n. at 1. It is undisputed that Plaintiff was authorized to receive a myelogram by the New York State Insurance Fund, but this alone is insufficient to create material issue of fact for trial as to whether Plaintiff suffered a serious medical condition and whether Harter was deliberately indifferent to that condition.

Plaintiff also contends that the attorney representing Harter in this action "neglected to produce all discovery materials in medical files," including the New York State Insurance Fund authorization approval letter dated May 12, 2003. *Id.* Contrary to Plaintiff's assertion, that document is part of the record (attached to Harter's motion for summary judgment as Exhibit "K", ECF No. 72-15) and again, merely supports an uncontroverted fact and is not probative of Plaintiff's medical condition or Harter's state of mind.

In sum, Plaintiff's claim amounts to a disagreement with Harter regarding his course of medical treatment, which does not amount to deliberate indifference to serious medical needs. *Chance*, 143 F3d 698; *Murphy v. Correctional Medical Services*, No. 04 CV 71, 2006 WL 367842, at *6 (D. Vt. Feb. 15, 2006) (timing of inmate's requested x-ray was "simply a subject of disagreement between [the inmate] and his care providers.")

Since the Court agrees that Defendant Harter is entitled to judgment as a matter of law on the grounds that Plaintiff failed to establish that he suffered from a sufficiently serious medical condition and that Harter was deliberately indifferent to his medical needs, the Court need not reach the issues of whether Harter is entitled to qualified immunity.

Consequently, Harter's motion for summary judgment is granted, and Plaintiff's Second Amended Complaint is dismissed with respect to Defendant Harter.

### The State Defendants' Motion

Plaintiff has asserted four claims against various members of DOCCS medical staff and administration while he was housed at Livingston, Groveland, and Gowanda Correctional Facilities, alleging that Defendants Augustin, DePerio, Felker, and Melendez violated his Eigth Amendment protection against cruel and unusual punishment when they were deliberately indifferent to Plaintiff's serious medical condition, namely, Plaintiff's ruptured discs in his back. Second Am. Compl. at 4-8.

The State Defendants have moved for summary judgment on the grounds that they did not violate the Eighth Amendment and that any claims against the State Defendants in their official capacities must be dismissed. State Def. Mem., ECF No. 71, at 1-9. Plaintiff has opposed the summary judgment motion. Pl. Opp'n. at 4-6. As discussed in detail below, the State Defendants' motion is granted.

***Defendant Augustin***

Plaintiff's First Claim in the Second Amended Complaint asserts that Augustin violated his rights under the Eighth Amendment in connection with the treatment he received when Augustin failed to "follow doctors prescribed medication and diagnosis for serious injuries." Second Am. Compl., First Claim. Specifically, Plaintiff contends that Augustin discontinued his Neurontin prescription, adjusted his Motrin prescription, refused to place a copy of "approved medical papers for the myelogram Disco CT Scan" in Plaintiff's medical file, and that instead of ordering a myelogram, Augustin ordered an MRI of Plaintiff's back. Pl. Opp'n. at 5.

Plaintiff's claim fails as a matter of law. His complaints that Augustin ordered an MRI instead of a myelogram, and that Augustin did not prescribe Soma per Plaintiff's request, are merely disagreements with the doctor's ordered courses of treatment, which do not not rise to the level of deliberate indifference under the Eighth Amendment. *See Wright v. Genovese*, 694 F.Supp.2d 137, 160 (N.D.N.Y. 2010) ("Differences in opinions between a doctor and an inmate patient as to the appropriate pain medication clearly do not support a claim that the doctor was deliberately indifferent to the inmate's 'serious' medical needs.") (citing and collecting cases); *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F.Supp.2d 303, 312 (S.D.N.Y. 2001) ("[D]isagreements over medications, diagnostic techniques, . . . forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim"); *Troy v. Kuhlmann*, No. 96–7190, 1999 WL 825622, at *6 (S.D.N.Y. Oct. 15, 1999) ("[A] prisoner's disagreement with the diagnostic techniques or forms of treatment employed by medical personnel does not itself give rise to an Eighth Amendment claim.").

Assuming, *arugendo*, Plaintiff's back condition constitutes a serious medical need for purposes of the Eighth Amendment, Augustin's alleged act in refusing to place Plaintiff's myelogram approval letter in his inmate medical file, even if true, is not sufficient to state a claim of deliberate indifference because the request is unrelated to the adequacy of the medical treatment Plaintiff received at Livingston.

"Subjectively, the charged official must act with a sufficiently culpable state of mind." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). "The required state of mind, equivalent to criminal recklessness, is that the official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998) (quoting *Hathaway*, 99 F.3d at 553 (internal quotation omitted)); *see also, e.g., LaBounty v. Coughlin*, 137 F.3d 68, 72–73 (2d Cir.1998) ("To succeed in showing deliberate indifference, [plaintiff] must show that the acts of defendants involved more than lack of due care, but rather involved obduracy and wantonness in placing his health in danger.").

Here, no such state of mind has been established. To the contrary, Plaintiff's medical file indicates that Augustin ordered an x-ray of Plaintiff's back in January, 2004, and an MRI in April, 2004, in response to Plaintiff's persistent complaints of pain. This cannot constitute deliberate indifference because there is clearly no wanton infliction of pain indicated on this record.

Even if Augustin were required to place the New York State Insurance Fund's authorization for Plaintiff's myelogram into his medical file per DOCCS policy, a violation of a state regulation or internal policy does not equate to a constitutional infirmity. *See,*

*e.g., Patterson v. Coughlin*, 761 F.2d 886, 891 (2d Cir.1985) ("a state employee's failure to conform to state law does not in itself violate the Constitution and is not alone actionable under § 1983").

The Court finds that Augustin is entitled to summary judgment on the First Claim, and the action is dismissed with respect to Augustin.

**Defendants DePerio and Felker**

Plaintiff next asserts that Defendants DePerio and Felker violated his rights under the Eighth Amendment by refusing to issue him an elevator permit and failing to "follow doctors orders for issue [sic] of medications." Second Am. Compl., Second Claim.

At the outset, Plaintiff submits no evidence that either DePerio or Felker failed to follow another physician's orders for medication, nor does he state which doctor prescribed which medication for him and how either Defendant failed to follow that prescription. Indeed, it appears that Plaintiff's primary complaint is that he requested prescription for a specific muscle relaxant, Soma,[6] and that his request was denied by DePerio. Pl. Opp'n. at 5.

While it is true that DePerio did deny Plaintiff's request for Soma, the record unambiguously establishes that Soma was, at that time, no longer an approved non-formulary medication, that DePerio did not feel that Soma was necessary, and that Plaintiff was prescribed an alternative formulary medication. Felker Decl., Ex. A, ECF No. 69.

---

[6] According to Defendant Augustin, Soma is described as "a muscle relaxer that works by blocking pain sensations between the nerves and the brain." Due to its potential for becoming habit-forming and impairing thinking or reactions, Soma was removed from the DOCCS list of approved medication, and its use was subject to approval by regional medical staff. Augustin Decl., ¶ 7 n.1, ECF No. 69.

Contrary to Plaintiff's belief, an inmate is not entitled to the medication of his choice, and, although Plaintiff appears to have a dispute regarding DePerio's medical judgment, it does not implicate the Eighth Amendment. *Grant v. Burroughs*, 96–CV–2753, 2000 WL 1277592, at *5 (S.D.N.Y. Sept. 8, 2000) (prisoner denied pain medication does not have a constitutional right to treatment of his choice); *Sonds*, 151 F.Supp.2d at 312; *Estelle*, 429 U.S. at 107.

Plaintiff also cannot establish a claim of deliberate indifference against De Perio and Felker with regard to the denial of an elevator permit at Groveland. Between August, 2004, when his initial request for the permit was denied, and November, 2004, when Felker issued Plaintiff the permit, it was noted that Plaintiff was provided a lower bed permit, a cane, a back brace, received analgesic balm and prescription medications, and was also referred to an orthopedic specialist at ECMC. Plaintiff was ultimately issued an elevator permit pending an upcoming discogram and spinal surgery. The fact that DePerio assessed Plaintiff's need for an elevator pass and initially determined that it was not required for him cannot qualify as deliberate indifference. *See Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir.1981) (delay in granting elevator pass does not constitute deliberate indifference). Accordingly, Plaintiff cannot show that either DePerio or Felker had the requisite state of mind to establish deliberate indifference to his serious medical needs.

### *Defendant Melendez*

In the Fourth Claim of Plaintiff's Second Amended Complaint, Plaintiff alleges that Melendez approved a program for Plaintiff on the fourth floor at Gowanda, which caused a reoccurrence of the injury to his back and leg. Second Am. Compl., Fourth Claim. However, the record is inconsistent with any claim of deliberate indifference by Melendez

to Plaintiff's medical needs.

First, there is no evidence that, upon arrival Plaintiff's at Gowanda, Melendez personally knew of his back surgery on March 4, 2005 or the extent of his back injury, when Plaintiff was assigned to a fourth-floor cell. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). Second, Plaintiff's medical records from Gowanda indicate that Plaintiff had, at some point, been transferred to a first-floor setting by medical staff after his complaints of increasing pain from climbing stairs. At most, Plaintiff has alleged a claim of  negligence, which is not actionable under 42 U.S.C. § 1983 as an Eighth Amendment medical claim.

The record also indicates that Plaintiff wrote a letter to Melendez on December 30, 2005 requesting a Reasonable Accommodation Form, which Melendez provided on January 3, 2006. Plaintiff completed that form on January 6, 2006, and requested that he be transferred to a one-level facility. Plaintiff was granted his accommodation, and was transferred to a one-level facility on February 2, 2006. Since Melendez promptly reviewed, approved, and processed Plaintiff's request, it cannot be said that Melendez possessed a wanton state of mind necessary for an Eighth Amendment deliberate indifference claim. *See Wilson*, 501 U.S. at 299. Therefore, he is entitled to summary judgment.

**CONCLUSION**

For the reasons stated above, the Defendants' motions for summary judgment, ECF Nos. 69, 72,  are granted, and the Plaintiff's Second Amended Complaint, ECF No. 53, is dismissed.

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

So Ordered.

Dated:   April 26, 2012
         Rochester, New York

ENTER.

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge